Caruthers, J.,
delivered the opinion of the Court.
The firm of Anderson and Word, of which the complainant is the surviving partner, was indebted to the defendants $2,700, and in June, 1855, the claim was placed in the hands of an attorney, at Shelhyville, for collection. R. 0. Gardner, ■ a member of the firm of Morgan & Co., says, “he authorized an attorney to take *80 notes on Samuel Doak, of Bedford county, as collateral security, to be applied to the payment of said claim. The claims then held against Messrs. Anderson and Word were sent to our attorneys, with instructions to make the settlement, by taking notes on Samuel Doak, endorsed by Messrs. Anderson and Word, the notes being of such a size as come under the jurisdiction of a magistrate. This understanding was made with them some time in May, 1855. My reasons for requiring the notes of Doak and others, coming under the jurisdiction of a magistrate, was, that we could have them secured by a stayor, in a few days from the service of the writ.” The receipt of the attorney for these notes on Doak for $433 33-J-, each, and various other notes, dated 28th June, 1855, taken under this agreement is filed. It is in these words: “Received of Anderson and Word for Morgan & Oo., as collateral security, the following claims, endorsed by Anderson and Word.”
The Doak debts have been lost by his insolvency, and the contest now is on whom the loss shall fall. The defendants brought an action at law upon their original claim, and this bill is filed to enjoin the same to the extent of these notes on Doak, upon the ground of negligence in the defendants or their attorney. Judgment was confessed upon them by Doak, in favor of Morgan & Oo., on 12th July, 1855, but not stayed. Doak proves, that when the judgments were entered, he asked one of the attorneys of Morgan & Oo., who was attending to the business, if he must stay them, to which he replied, he must, “ but he need not be particular about doing so within the time prescribed by law, but whenever it was convenient,” or something in substance *81 to that effect, all by consent. “ I -never did stay them, and no executions were issued upon them, as far as I know.” He further proves that the money could have been made, if execution had issued at any time before, or about the 1st of December, 1855, when he made an assignment of all his property to secure his creditors. One of the attorneys of the defendants was examined, and agrees with Doak, except that he told him the stay must be given in the time required by law. He says, “I was called off from this county the next day, and lost sight of -the judgments.”
There is no doubt but that the money could have been made at any time between the 12th July, when the judgments were entered, and the 1st of December, 1855, if executions had issued, or that Doak could have procured stayors before the latter date, if it had been pressed upon him.
This being the state of the facts, - it is a question of some difficulty to decide upon whom the law will cast the loss. The debts were certainly lost by the failure to order executions, or compelling Doak to stay the judgments. This negligence was not sufficient to exonerate a surety, if that had been the relation which existed between Doak and the complainant towards Morgan & Co., as creditors.
The argument here is based upon that relation, and is well sustained by authority. But is the analogy so perfect as to bring the case before us under the operation of the same principle? The surety occupies the double relation of a principal as to the creditor, and only a guarantor as to the principal debtor. So long as nothing is done on the part of the • creditor, to ob *82 struct the surety’s right to coerce action against the principal, or, no change made in the nature of the obligation, or valid agreement for delay, or some certain means of satisfaction actually in hand, relinquished, he is not discharged. Mere delay in pursuing the principal by suit, or taking out execution, or failure to resort to any other available means of making the debt out of the principal, will not, of itself, exonerate the surety. The notes to the case of Bus. vs. Barrington, White and Tudor’s L. C. in Eq., vol. 2, part 2, presents all the authorities on this question, and settle, beyond doubt, that mere inaction or delay, will not discharge the surety.
But, by the same authority, and in reason, the duties and vigilance of a creditor, in relation to debts placed in his hands, as collateral security, by his debtor, is entirely- different.
This is a case of trust and confidence, imposing-duties on the creditor. The assignor of collaterals parts with his control over them, and the assignee should be bound to use proper exertions to render them effectual for the purpose for which they were assigned.
The principle- is, that when a right of action or a judgment is transferred by a debtor to his creditor, to secure the debt, or, as collateral security, ordinary diligence must be used to make it available, and if a loss occurs by negligence, even passive negligence, which is unreasonable, and results in loss, it will be a good defense to a suit on the original debt. 2 White and Tudor, 371, 1. Citing exparte, Mure, 1 Cox, 63; 5 Simon’s and Stewart, 518; 6 B. Monroe, 226.
The case in 1 Cox, was, where the creditor failed to issue execution on a judgment assigned as a security, *83 until the judgment debtor became insolvent. It is true, that it is said by White and Tudor, in the case cited above,- at page 873, that the American authorities do not carry the duty of the creditor so far, to take active measures to collect collateral securities, taken for debts, as the English.
Upon almost every such question we find discordant opinions and authorities, and we must choose between them in settling our own law.. In deciding, between jarring decisions, we must be governed! by the weight of argument, and the solidity of the. reasons, by which the different cases are sustained. It is better in all-such cases to fix a certain rule of our own, even if it be not the best, whenever a question arises, than to leave the law uncertain and doubtful..
In this way, progress is gradually made in clearing up the doubts and uncertainty of the- law. In the conflict of reported cases and, judicial opinions, we hold it to be the most just and reasonable rule, that where a creditor receives by assignment or delivery from his debtor, claims upon third', persons, as collateral security for his debts, that he should, be held liable for any of such claims that may be lost by his neglect, or negligence, or the want of ordinary attention and vigilance on his part. The fortification of his debt thus obtained, and the trust reposed by his debtor,, by entrusting him with the control of his means, of payment, make it proper and right that he should be held responsible for any loss that may result from his supineness or unreasonable neglect, in j making them available.
The error in the argument against this conclusion, arises from the assumption, that the ordinary relationship *84 of principal and surety, exists in this case. We think the distinction is manifest, as we have attempted to show. True, the defendants had a double obligation upon the' plaintiff; first — upon the original note, and then upon his endorsement, waiving demand and notice.
They resort to the former, and must be held to the rules applicable to that case. The defendants, instead of suing upon their own claims against complainant, which would, in all probability, have induced the latter to have adopted the most speedy method for the collection of their debts against L>oak and others, to meet it, preferred to suspend proceedings upon that, and get into their hands, as collateral claims upon those others, by which their debt would be doubly secured.
In obtaining this advantage, by taking under their control the notes of their debtor, they took upon themselves a trust, which they were bound faithfully to perform for their debtor’s benefit, and for any injury flowing from their unreasonable neglect, they must be liable.
Mr. Gardner, one of the firm, states, that his object in taking notes under the jurisdiction of a magistrate, was, to have them quickly secured by good stayors. This was, doubtless, the object and understanding of both parties. It was more important to Word, than his creditors, that this should be promptly attended to, as his liability on the original note still remained, and would be enforced, in case the collaterals failed.
Was there not very great negligence in this case, which evidently resulted in the entire loss of the claim assigned ?
The judgments were rendered on the 12th of July, *85 and the debtor remained perfectly good .till the 1st of December, a period of near five months. The least attention to the case, the bare mention of the subject to Doak at any time after the day of the judgments, ■would have caused them to have been well secured by stayors, as we may presume, from the evidence, and if that had not been done, the issuance of executions would have made the money sure.
It is not true, that the attorney was acting for both parties, he only occupied that relation in reference to those transferred and assigned claims to the defendants.
They retained him to collect their debt, and authorized him to receive and. collect their collateral securities.
All power and control over the claims as attorney had been surrendered by the assignment.
The degree of negligence which would fix liability, must be left to be determined upon' the facts of each particular case, in view of the general rules on the subject. It is enough for this case to decide, that it exists Rere.
The result is, that the decree must he reversed, and the defendants perpetually enjoined from the collection of so much of their original debt, as- will be equal to the amount of - the three notes on Doak. ’